UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MERRILL LYNCH COMMERCIAL FINANCE
CORP.,

                          Plaintiff,

                        -against-

ALL STATE ENVELOPES LTD., RITA L.
FRIEDMAN, and ISAAC FRIEDMAN

                        Defendants.
----------------------------------------------------------------X

**REPORT &**
**RECOMMENDATION**

09-CV-785 (NGG) (JMA)

**AZRACK, United States Magistrate Judge:**

Plaintiff Merrill Lynch Commercial Finance Corporation ("plaintiff" or "MLCFC") brought this action on February 25, 2009, alleging that defendants All State Envelopes Ltd. ("All State") and Rita and Isaac Friedman (the "Friedmans") (collectively "defendants") defaulted on a commercial loan and associated personal guarantee. On March 24, 2010, the Honorable Nicholas G. Garaufis granted plaintiff's motion for summary judgment and referred the matter to me for a Report and Recommendation on damages. For the reasons discussed below, I respectfully recommend that the Court enter judgment against the defendants in the amount of $334,671.40 and $56.08 in interest per day until the date of judgment.

## I. FACTS

The plaintiff established the following facts on motion for summary judgment. They are taken from Judge Garaufis's memorandum and order granting the motion. (Dkt. No. 15: Mem. & Order, Mar. 24, 2010 ("Summary Judgment Order") at 1–3.)

In January 2002, Merrill Lynch Business Financial Services ("MLBFS") and All State entered into a loan agreement under which MLBFS extended a commercial line of credit to All

1

State. The loan agreement required All State to pay to MLBFS, on a set maturity date, the aggregate unpaid principal amount of any loan extended under the agreement, as well as any interest or other fees contemplated in the agreement. The loan agreement also included an acceleration clause that provided that if All State failed to pay any amount due, all monies borrowed by All State would immediately become due along with interest, late fees, and attorney's fees incurred in collecting the loan. Under a separate agreement with MLFBS, the Friedmans, All State's principals, personally guaranteed payment of all obligations due under the loan agreement. In December 2007, MLBFS assigned its interests in the loan and personal guaranty to plaintiff MLCFC. On December 31, 2008, the loan agreement matured and payment became due. Despite the plaintiff's written demand, defendants failed to pay the monies owed.

MLCFC commenced this action to recover the outstanding loan balance, interest, and attorneys fees on February 25, 2009. The defendants answered on April 6, 2009. On July 29, 2009, the plaintiff moved for summary judgment. Despite receiving notice of the original briefing schedule (Scheduling Order, dated Jun. 2, 2009), an extension of time to serve an opposition (Dkt. No. 7), and an additional reminder from the Court (Dkt. No. 13), the defendants did not respond and the Court treated the plaintiff's motion as unopposed. On March 24, 2010, Judge Garaufis granted plaintiff's motion for summary judgment and referred the matter to me for a Report & Recommendation on damages. The following day, I issued a briefing schedule providing each party with an opportunity to be heard on damages. (Scheduling Order, dated Mar. 25, 2010.) The plaintiff submitted additional briefing and evidence on damages (Dkt. Nos. 17–19), but defendants again failed to file a response or otherwise contest the plaintiff's assessment of damages.

## II. DISCUSSION

The plaintiff seeks entry of judgment in the amount of the principal loan plus interest and attorneys' fees. (Dkt. No. 18: Salyers Decl. Supp. Damages, Apr. 23, 2010 ("Salyers Decl.") ¶ 2.) As established at the liability phase of summary judgment, the plaintiff is entitled to each of these forms of relief under the terms of the loan agreement (Summary Judgment Order 2) and the defendants have not raised any facts or arguments to the contrary. The Court must now determine the appropriate amount of such relief.[1]

### 1. Principal & Interest

The plaintiff seeks $327,502.14 in principal, $3,353.64 in interest through April 1, 2010, $625.44 in interest from April 2 through April 12, 2010, and additional prejudgment interest of $56.86 per day from April 13, 2010, to the date of judgment. (Salyers Decl. ¶ 2.) The plaintiff submitted a loan account statement substantiating the requested principal and interest through April 1, 2010 and indicating that interest continues to accrue at a rate of 6.25% per annum.[2] (Salyers Decl. Ex. A.) However, the plaintiff did not submit any calculations or evidence substantiating its request for additional interest of $625.44 from April 2 through April 12, 2010, and $56.86 per day from April 13, 2010, to the date of judgment. My independent calculations reveal that the plaintiff is actually entitled to $616.87 in interest from April 2 through April 12, 2010,[3] and daily interest of $56.08[4] from April 13, 2010 to the date of judgment.

---

[1] A court may hold an inquest by affidavit so long as there is a basis for the damages awarded. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). The plaintiff's damages submissions (Dkt. Nos. 17–18) provide an adequate factual basis for the assessment of damages.

[2] All State agreed to pay interest at a rate equal to the prime rate plus 3.00%. (Salyers Decl. Ex. A.) The prime rate has held steady at 3.25% since December 16, 2008, and is not expected to change until September 21, 2010. See http://www.wsjprimerate.us/index.html (last visited Sept. 8, 2010).

[3] I calculated the interest due for April 2 through April 12 by using the simple interest formula of *interest* = *Principal x Rate x Time*. Here, the principal was $327,502.14; the rate was 6.25% per year or 0.017% per day; and the time was 11 (the number of days between April 2 and April 12, 2010).

[4] To calculate daily interest, I used a time value of "1" to represent a single day.

3

## 2. Attorneys' Fees

The plaintiff also seeks attorneys' fees. (Salyers Decl. ¶ 2.) The plaintiff is entitled to attorneys' fees under the terms of the loan agreement. (Summary Judgment Order 2). However, the amount of attorneys' fees awarded remains within the sound discretion of this Court. See McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993) (holding that in a fee application based on contract, "the judge determines the amount of attorneys' fees owed . . . after the liability for such fees is decided"); GMC v. Villa Marin Chevrolet, Inc., 240 F. Supp. 2d. 182, 185 (E.D.N.Y. 2002) ("Regardless of whether fees are awarded pursuant to statute or pursuant to contract, the determination of what is a reasonable award is within the sound discretion of the trial court."). In the Second Circuit, attorneys' fees are determined by multiplying a reasonable hourly rate by the number of hours reasonably expended to arrive at a presumptively reasonable fee, which may then be adjusted to account for the circumstances of the case. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117–18 (2d Cir. 2007) amended on other grounds by 522 F.3d 182 (2d Cir. 2008). The presumptively reasonable fee is defined as "what a reasonable, paying client would be willing to pay," in order to "spend the minimum necessary to litigate the case effectively." Id. at 112, 118.

The hourly rate generally must be consistent with rates charged within the district in which the reviewing court sits. See id. at 119 (quoting In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987)). In setting the hourly rate, courts must "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees." Arbor Hill, 493 F.3d at 117 (identifying twelve such factors) (quoting Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)). In calculating the number of reasonable hours, district courts look to the facts and complexity of

4

the case and take into account their own experience with the case. Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (citations omitted). Hours should be examined "with a view to the value of the work product of the specific expenditures to the client's case." Tr. of the Road Carriers Local 707 Welfare Fund v. Goldberg, No. 08-CV-0884, 2009 WL 3497493, at *9 (E.D.N.Y. Oct. 28, 2009) (citations omitted). The fee applicant bears the burden of proving that the hours are reasonable and must produce contemporaneous time records showing the dates, hours expended, and nature of work performed by each attorney. N.Y. State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (1983). Courts should reduce hours where the fee applicant submits deficient or incomplete billing records, or bills excess, redundant or otherwise unnecessary hours. See Hensley v. Eckerhart, 461 U.S. 424, 437 n. 12 (1983); Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

The plaintiff requests $3,554.17 in attorneys' fees. (Salyers Decl. ¶ 2.) Plaintiff's counsel, Spencer L. Schneider, who has been practicing law for twenty-five years, expended fourteen hours and thirteen minutes on this matter and charged the plaintiff $250 per hour. (Dkt. No. 19: Schneider Decl. Supp. Damages, Apr. 23, 2010 ("Schneider Decl.") ¶ 2). Mr. Schneider's hourly rate is reasonable and consistent with the prevailing rate for attorney services in similar cases in the Eastern District. See, e.g., Merrill Lynch Business Financial Services Inc. v. Brook-Island Medical Associates, P.C., No. 09-CV-5912, 2007 WL 2667454, at *6–7 (E.D.N.Y. Aug. 16, 2007 (collecting cases). The amount of time he expended on the matter is also reasonable considering the effort he put forth in moving for summary judgment. However, Mr. Schneider's fee must be reduced to account for a few instances of excessive billing, such as spending excessive time on routine tasks and charging his full rate for administrative tasks. For example, he charged $75.00 for "[r]eviewing scheduling order & docket" just one day after filing

the complaint and charged $50.00 for unspecified "[a]dmin tasks re sj motion." (Id.) Additionally, some of Mr. Schneider's billing entries are vague. For example, he charged $50.00 for unspecified "[v]arious tasks" and on several occasions billed for conferring with opposing counsel or chambers without specifying the nature of those communications. (Id.) Accordingly, the Court cannot accurately determine the necessity or value of those services. To account for these billing defects, I respectfully recommend that the Court reduce Mr. Schneider's fee by ten percent and award plaintiff's $3,198.75 in fees.

### III. CONCLUSION

For the reasons discussed above, I respectfully recommend that the Court enter judgment against the defendants in the amount of $334,671.40, which consists of $327,502.14 in principal, $3,353.64 in interest through April 1, 2010, $616.87 in interest from April 2 through April 12, and $3,198.75 in attorneys' fees.

The plaintiff shall serve a copy of this Report and Recommendation ("R&R") on the defendants and promptly file proof of service on ECF. Objections to this R&R must be filed on ECF within fourteen (14) days of the date of this R&R. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

SO ORDERED.

Dated: September 14, 2010
Brooklyn, New York

s/Joan M. Azrack

_____
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE